## Case No. 5,668.

### GRAHAM v. GAMMON et al.

[7 Biss. 490; 3 Ban. & A. 7; 9 Chi. Leg. News, 370; 4 Law & Eq. Rep. 261.][1]

Circuit Court, N. D. Illinois. July 10, 1877.

PRIOR PATENT—SUGGESTION—MOWERS.

1. It is a well-settled principle of patent law, that the mere suggestion that a given result may be obtained, is not patentable, and does not anticipate a patent by another, but a mechanism or device must be described by which the suggested result is obtained.

2. Where a patent is for mechanism by which a particular result is produced, a prior patent, in order to anticipate it, must contain more than a mere statement that the result may be accomplished. It must contain a description of the mechanism by which it is accomplished.

[Cited in Graham v. Geneva Lake Crawford Manuf'g Co., 11 Fed. 139; Graham v. Plano Manuf'g Co., 33 Fed. 917.]

3. The invention claimed in the first and second claims of letters patent No. 74.342, granted to Alvaro B. Graham, February 11th, 1868, for a device for rocking or rolling sickle bar or finger beam of a harvester, is novel, and is not anticipated by the patents granted to Dolph, Zug, Ball, Bartlett and Dodge, or Wemple.

4. The vibratable link in the Sprague mower is an infringement on the Graham patent, as it is an equivalent mode of producing the same result.

[1] [Reported by Josiah H. Bissell, Esq., and by Hubert A. Banning, Esq., and Henry Arden, Esq., and here compiled and reprinted by permission. The syllabus is from 3 Ban. & A. 7, and the statement and opinion are from 7 Biss. 490. 4 Law & Eq. Rep. 261, contains only a partial report.]

This is a bill in equity to restrain the alleged violations of a patent [No. 74,342] issued by the United States government to Alvaro B. Graham, dated February 11th, 1868, for an improvement in harvesters. The title of the complainant [Hugh Graham] to the patent is not disputed, and the proof shows that complainant is the assignee of the patentee; but the defendants [Elijah J. Gammon and others] deny, first, the novelty of Graham's device; and secondly, that they infringed the patent.

Ephraim Banning and Haines & Tripp, for complainant.

West & Bond, for defendants.

BLODGETT, District Judge. This patent contains eleven distinct claims, but the controversy in this case is confined to the first two claims.

The feature of the machine covered by the two claims in controversy, is the device for rocking or rolling the sickle bar—or "finger beam," as it is called by the patentee. This finger beam is so arranged that it may be rocked or tipped upward or downward so as to incline the teeth or fingers up or down, so that it may be passed over a stone or down into a hollow.

This is accomplished by joining the sickle bar, or "finger beam," as it is called, to what the patentee calls a "vibratable link," which is a link extending from the finger bar backward to a bracket which is fastened to the frame of the machine, so that the finger beam may be raised or lowered, and through its connection with this vibratable link it can be regulated, or tilted either up or down, the tilting being accomplished by means of the vertical arm which extends up from the vibratable link, and a lever attached to the top of the arm, reaching forward to a point convenient to the seat of the driver, so that the driver readily works or controls the rocking movement as occasion requires. The mechanism by which the rocking is produced consists of a swivel joint "M," at the point where the vibratable link is attached to the bracket, and the swivel joint "N" which connects the vibratable link with the draught rod, so that the cutting mechanism is drawn or impelled forward by this draught rod, connected as it is by the swivel to the link, thereby permitting the motions that are required for the purpose of the action of the finger bar without interfering with the rocking or rolling motion. There are also other devices in the machine intended to raise or lower the sickle bar, but those are not in controversy. The machine which is shown in the drawings by the patentee in this case is known to farmers and manufacturers as a "rear cut machine," but the patentee provides in his specifications, or suggests that the device is equally applicable to a forward cut, where the cutting apparatus is forward of the axle and wheel, and to accomplish this change he suggests that the draught rod would become a push rod, and would become subject to a pushing strain or force instead of a tensile or drawing strain.

The claims under consideration and in controversy in this case are as follows: "The combination as set forth in a harvester of the finger beam with the gearing carriage, by means of the vibratable link, and the draught rod and swivel joints, M and N, so that the finger beam may both rise and fall at either end, and rock forward or backward." Second: "I also claim the combination as set forth in a harvester of the finger beam, gearing carriage, vibratable link, draught rod, swivel joint and arm, by which the rocking of the finger beam is controlled." The last claim is, in one sense, a repetition of the other, that is, he claims the whole of this mechanism in combination.

The defendants insist that the idea of rocking the finger beam is old; and have put in evidence several prior patents issued by the United States to different patentees older than the patent in question, the most important of which are the Dolph patent, issued in 1857, the Zug patent, issued in 1859, the Ball patent, issued in 1859, the Bartlett and Dodge, issued in 1862, and the Wemple patent of 1867. The defendants insist that these various patents contain the principle or idea involved in the complainant's patent, so far as the rolling or rocking of the finger bar is concerned. It is contended, for instance, that in the model of the Zug patent, which is put in evidence, there is a provision for the rocking or rolling of the finger bar; but I must say that I can find no such feature either in the specification or model. It is true that he suggests that it may be tilted, but I think when you take his description of the construction, the only tipping he refers to is the lifting of the finger bar by means of a lever, and not the tilting or rocking motion provided for by Graham. There is a link extending back and fastened to the frame, but there is no swivel joint, and no provision for rocking or rolling the finger bar by means of a swivel joint. And even if he had a swivel joint at the point where the link is attached to the frame, the long shoe proceeding forward from the vibratable link or the connecting link, would effectually prevent or interfere with the rocking motion which the patentee, Graham, has accomplished; so that I do not find the mechanism in this patent.

The same may be said of the Ball patent. Ball has the finger beam attached firmly to the shoe. It is also steadied by a rod which reaches back to a bracket attached to the gearing carriage, and there is apparently a swivel or loose joint by which it is attached; but there is no joint forward, and no means by which the mechanism—the finger bar, as such, can be rolled or tipped in the manner provided by the Graham patent.

So, too, in the Bartlett and Dodge mechanism. We find this same long shoe extending

forward with no device for rocking or rolling; and the same may be said of the Zug patent. There is no possible device in the patent for the rocking, and no device or means by which the finger beam can be rolled or tilted in the manner provided in the Graham patent.

In the Dolph patent it is equally difficult to find any mechanism which was intended to secure the peculiar motions which I find in the patent to Graham. And it may be said, in reference to all these prior patents, that while they speak of rocking, or tilting, or tipping the finger beam, they, none of them, describe any mechanism by which it can be accomplished. It is a well settled principle of patent law, that the mere suggestion that a given result can be obtained is not patentable, and does not anticipate a patent by another, but a mechanism or device must be described by which the suggested result is attained.

The mere saying, for instance, as was done a century, or two or three centuries ago, that vessels could be propelled by steam, did not deprive Fitch or Fulton of their right to a patent on the mechanisms by which they accomplished that result. The mere idea that intelligence could be communicated by electricity, did not deprive Morse of his patent upon his mechanism. So the suggestion by these various inventors who antedated Mr. Graham in various improvements upon the harvester, that the finger beam may be tipped or may be rocked, does not deprive Graham of his right to a patent upon his mechanism by which he did so, as long as they did not show a mechanism by which they accomplished the same result.

The other patent put in evidence, and the one which to my mind comes the nearest to anticipating this plaintiff, is the patent to A. Wemple, of 1867. Mr. Wemple shows in his specifications and drawings a device by which he does produce a tilting motion of the finger beam; but his device is so different—his mechanism by which he accomplishes the result so unlike that of Graham, that I think the two patents may possibly both stand. At any rate I do not think that the device of Wemple anticipates the much more simple device of Graham. It is not necessary for me to go into an extended discussion or analysis of the peculiar mechanism by which Mr. Wemple proposed to secure this rolling or tilting motion in the finger beam. It is enough to say that I find it sufficiently different from that of Graham, to justify my conclusion that he has not so far anticipated Graham in the art as to defeat the Graham patent.

With these views, therefore, I must hold that the defense that the complainant's patent is void for want of novelty, is not sustained. On the contrary, I think that the evidence shows Mr. Graham to be the first who has really accomplished this desirable tilting or tipping motion successfully, by the simple mechanism which he shows in his drawings and patent. The only other question left in the case then, is the question whether the machine of the defendant's infringes complainant's patent. The model of defendant's machine which is put in evidence—known as the "Sprague Mower," shows a vibratable link to which the finger bar is connected by precisely the same mechanism—that is, a swivel joint—that connects the finger bar of Graham's machine to the vibratable link. The vibratable link in the Sprague mower is not constructed precisely, so far as the shape is concerned, like the vibratable link of Graham, but it reaches back—is fastened firmly to the gearing carriage, or to a bracket which is connected with the gearing carriage by a swivel joint, and is worked by a lever—not a vertical lever, but a lever which secures the motion of tilting up and down, in the same manner as the Graham patent. It does not roll or tip so much as Graham's finger bar, but it is the same motion, although less in degree, and I am very clearly of the opinion that the device is essentially the same. It has been urged, and was very earnestly contended at the trial, that this device lacks the swivel joint M, and that it therefore does not contain all the elements of Graham's device.

Here we have a draught rod connected by a hook joint to a vibratable link, and extending forward and fastened to the frame. But it is contended that the swivel joint is not there. I must say that I think the patentee, or whoever prepared the specifications in the Graham patent is a little unfortunate in the choice of terms by which he describes his mechanism. In one sense there is no swivel joint here in the defendant's machine. That is, it is not technically a swivel joint, and especially the draught rod is not connected to the vibratable link by what is strictly called a swivel joint. It is a mere hook, but it performs all the functions of Graham's draught rod and swivel joint, and must be considered the equivalent of Graham's device in that particular. It is nothing after all but an equivalent mode of producing the same result.

There is a draught rod hooked to the vibratable link, and extending forward and passing through the gearing carriage so as to secure a steady uniform draught of the cutting apparatus in a forward direction. It is equally true that the lever by which the vibratable or tilting motion is secured, is not a vertical lever, but that makes no difference, whether the lever lies down horizontally or stands up. It performs the function or office of vibrating and tipping this finger bar. The result is precisely the same in both cases.

I am therefore of the opinion that an infringement is shown by the proof and that the patent is not void for want of novelty so far as the evidence in this case enables me to judge. The case will therefore be sent to

the master to assess the damages, unless the parties stipulate that no damages need be .assessed.

[I perhaps ought to say in addition to what I have already said in regard to the Wemple patent, that I do not think the Gra-ham a very broad patent. I do not think it is as broad as it would be if the idea had not .already been worked out of tilting or tipping the .finger beam by other inventors prior to this one. I think however that his patent is to be sustained for this specific device. I -do not concur in the idea that it will cover .all equivalents.] 2